[Cite as *State v. Dukes*, 2019-Ohio-2893.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 27966 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| LAVONTE DUKES | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2015-04-1156 |

DECISION AND JOURNAL ENTRY

Dated: July 17, 2019

HENSAL, Judge.

**{¶1}** Lavonte Dukes appeals his convictions and sentence in the Summit County Court of Common Pleas for felonious assault, vandalism, and breaking and entering. For the following reasons, this Court affirms in part and reverses in part.

I.

**{¶2}** On February 25, 2015, officers John Morgan and James Hadbavny responded to a report of domestic violence at a residence in Akron. They parked their cruiser a short distance from the house and began walking in the street towards it. As they did, they saw a dark van leaving the driveway of the house. At first, the van stopped and went back into the driveway. Moments later, however, it sped out of the driveway and headed straight at them. The officers jumped out of the way and identified Mr. Dukes as the driver of the van as it went by them. After passing the officers, the van crashed into the officers' cruiser and another vehicle before continuing down the street. The officers attempted to pursue the van, but there was too much

damage to their cruiser. After returning to the house, a woman also told the officers that Mr. Dukes had been the person driving the van.

{¶3} A few weeks later, someone broke into a storage facility owned by the City of Akron. From evidence recovered at the scene, the police determined that it was Mr. Dukes. The Grand Jury indicted Mr. Dukes for two counts of felonious assault and one count of vandalism arising out of the February 25 incident. It later issued a supplemental indictment charging Mr. Dukes with breaking and entering at the storage facility. Before trial, Mr. Dukes moved to dismiss the charges for violation of his speedy trial rights. The trial court denied his motion, and a jury found him guilty of the offenses. The trial court sentenced Mr. Dukes to a total of seven and a half years imprisonment. Mr. Dukes has appealed, assigning six errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT LACKED JURISDICTION TO CONVICT APPELLANT ON NON EXISTENT CHARGES UNDER OHIO LAW WHEN COUNT 1 & 2 OF THE INDICTMENTS WERE VOID *AB INITIO*.

{¶4} Mr. Dukes argues that his convictions for felonious assault are invalid because the indictment provided that the offenses were felonies of the second degree instead of felonies of the first degree. He argues that, although felonious assault is usually a felony of the second degree, because the alleged victims were peace officers, it elevated the offenses to a higher degree. R.C. 2903.11(D)(1). According to Mr. Dukes, because the offense level of his convictions is inconsistent with the officers' status, the convictions are void.

{¶5} Before trial, the court explained to Mr. Dukes that the indicting prosecutor likely made an error and could have moved the charges up a degree. The fact that the felonious assault charges could have been felonies of the first degree, however, does not make them void. The

counts in the indictment charged all of the elements required for felonious assault, and the jury found that all of those elements existed beyond a reasonable doubt. Mr. Dukes's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY UPHOLDING THE JURY VERDICT, WHEN THE EVIDENCE PRESENTED AT TRIAL WAS CONTRARY TO THE INDICTED OFFENSE OF VANDALISM.

{¶6}   Mr. Dukes next argues that the trial court incorrectly found that his vandalism conviction was a felony of the fourth degree. Revised Code Section 2909.05(E) provides that vandalism is a felony of the fifth degree unless "the value of the property or the amount of physical harm involved is seven thousand five hundred dollars or more * * *." The jury specifically found that the value of the property or the amount of physical harm involved in this case was less than $7,500. The trial court, however, incorrectly wrote in its sentencing entry that Mr. Dukes's vandalism conviction was a felony of the fourth degree. It is not clear from the sentencing transcript whether the court also thought that Mr. Dukes's conviction was a felony of the fourth degree at the time that it sentenced him for the offense.

{¶7}   Mr. Dukes also argues that the trial court incorrectly allowed the State to amend the indictment. The indictment initially charged Mr. Dukes with committing an act of vandalism that was a felony of the fourth degree. At the start of the trial, however, the State moved to amend the count to a felony of the fifth degree. *See* Crim.R. 7(D). Mr. Dukes's counsel indicated that he had no objection to the amendment, to which Mr. Dukes is bound. *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, ¶ 24. Mr. Dukes, therefore, has forfeited his right to challenge the amendment of the indictment unless it was plain error. *See State v. Chesler*, 9th Dist. Lorain No. 07CA009292, 2008-Ohio-4496, ¶ 11. Mr. Dukes has not argued

that it was plain error for the trial court to allow the State to amend the indictment, and we decline to develop an argument for him. Mr. Dukes's second assignment of error is sustained to the extent that the trial court mistakenly found that his vandalism conviction is a felony of the fourth degree.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING HIS MOTION TO DISMISS FOR [VIOLATION] OF APPELLANT[']S SPEEDY TRIAL RIGHTS.

{¶8} Mr. Dukes next argues that the trial court should have dismissed the action because the State violated his right to a speedy trial. "When reviewing an assignment of error raising a violation of a criminal defendant's right to a speedy trial, this court reviews questions of law de novo." *State v. Bennett*, 9th Dist. Summit No. 21121, 2003-Ohio-238, ¶ 5. We must accept the factual findings of the trial court, however, "if they are supported by some competent, credible evidence." *Id.*

{¶9} Section 2945.71(C)(2) provides that a person who is accused of a felony shall be brought to trial within 270 days. Because Mr. Dukes was held in jail during the pretrial period, each day counted as three for speedy-trial purposes. R.C. 2945.71(E). The time is tolled, however, during "any continuance granted on the accused's own motion[.]" R.C. 2945.72(H).

{¶10} Mr. Dukes argues that the trial court incorrectly counted the two-week period that followed the May 14, 2015, pretrial hearing and arraignment as a continuance that he requested. Mr. Dukes notes that, under the trial court's local rules, the court was required to schedule a pretrial hearing within three weeks of an arraignment. He argues that his counsel did not request a continuance on May 14 but merely suggested a date for the required pretrial hearing.

**{¶11}**  At the May 14 hearing, the trial court asked whether they would be arraigning Mr. Dukes on the supplemental indictment.  The parties indicated that they would.  Mr. Dukes's stand-in counsel then explained that Mr. Dukes intended to plead not guilty to the supplemental charge.  The parties discussed Mr. Dukes's bond, and the court decided to leave it unchanged.  At the conclusion of the hearing, Mr. Dukes's stand-in counsel asked for "[t]wo weeks[,]" and the court indicated that two weeks would be fine.  It held the next pretrial hearing on May 28, 2015.

**{¶12}**  The trial court found that the two-week period counted as a continuance requested by Mr. Dukes.  Upon review of the record, we conclude that its finding is supported by competent, credible evidence.  Although the local rule requires the court to hold a pretrial conference following an arraignment, it does not impose any particular period of delay.  Mr. Dukes, however, specifically requested that the court conduct the hearing two weeks after the arraignment.  This case is distinguishable from *State v. Reuschling*, 30 Ohio App.3d 81 (11th Dist.1986), because the trial court's journal entry in that case did not indicate that the date selected for the pretrial conference was at the defendant's request.  *Id*. at 83.

**{¶13}**  Mr. Dukes also argues that the speedy trial time period was not tolled between July 29, 2015, and August 12, 2015.  Mr. Dukes, however, moved to dismiss the indictment on speedy trial grounds on July 21, 2015, which tolled the running of the speedy trial clock until the court decided his motion on August 12, 2015.  *State v. Hollaender*, 9th Dist. Wayne Nos. 12CA0040, 13CA0006, 2014-Ohio-1782, ¶ 10.

**{¶14}**  Mr. Dukes also argues that the trial court unduly delayed ruling on his motion to dismiss.  *See State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 27.  As previously noted, Mr. Dukes filed his motion on July 21, 2015.  On July 29, which is the day Mr. Dukes's trial was

supposed to begin, the trial court heard oral arguments from the parties on the motion. Following those arguments, the trial court explained that it was going to have to review the written arguments and pull all of the journal entries that the court had issued in the case to date. It, therefore, concluded that it was going to have to continue the trial. Looking at upcoming dates, Mr. Dukes's attorney explained that he had trials on August 10 and 11 but would be available on August 12. The trial court, therefore, scheduled the trial for that date. The trial court announced its ruling on the motion to dismiss at the start of trial on August 12. Upon review of the record, we conclude that the trial court ruled on Mr. Dukes's written motion to dismiss within a reasonable time.

{¶15} Mr. Dukes also argues that the trial court incorrectly amended the journal entry it issued on May 22, 2015, nunc pro tunc, to indicate that it had schedule the pretrial for May 28 at the request of Mr. Dukes's attorney. According to Mr. Dukes, a court may not use a nunc pro tunc order to retroactively grant a continuance in order to avoid a speedy trial violation.

{¶16} A trial court may use a nunc pro tunc entry to correct clerical mistakes in a journal entry so that it "reflect[s] what actually occurred in open court." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30. At the time that the trial court ruled on Mr. Dukes's motion to dismiss, it explained that it had reviewed its journal entries and discovered that it had not indicated that it scheduled the pretrial conference for two weeks after Mr. Dukes's arraignment on the supplemental indictment at Mr. Dukes's request. As we have previously explained, the court's finding that that is what occurred in open court is supported by competent, credible evidence. We, therefore, conclude that the trial court could correct its May 22, 2015, journal entry with a nunc pro tunc order.

{¶17} Mr. Dukes further argues that he did not agree to the continuance made by his stand-in counsel at the May 14, 2015, hearing, asserting that there is nothing in the record that establishes that he accepted stand-in counsel for the hearing. At the beginning of the May 14 hearing, the prosecutor announced that Mr. Dukes was present with an attorney who was standing in for Mr. Dukes's attorney of record with Mr. Dukes's consent. Stand-in counsel also stated that he was standing in for Mr. Dukes's appointed counsel. Mr. Dukes did not object to the attorney's participation at the hearing, he did not lodge any objection to the stand-in counsel's actions at the next hearing, and he did not object to stand-in counsel's actions in his motion to dismiss. We, therefore, conclude that Mr. Dukes has forfeited his argument. Although he has not forfeited review of the issue for plain error, he has not argued plain error in his appellate brief, and we decline to construct an argument for him. Mr. Dukes's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO DECLARE A MISTRIAL BASED ON JUROR MISCONDUCT.

{¶18} Mr. Dukes next argues that the court should have declared a mistrial because one of the jurors used an online map application to look up the location where the alleged breaking and entering offense occurred and at least three jurors saw it. He also alleges that two of the jurors lied about whether they had viewed the image. According to Mr. Dukes, he was prejudiced by the misconduct because at least one juror used the information to clear up confusion he had about a drawing presented by the State.

{¶19} When analyzing a case of alleged juror misconduct, the trial court must first determine whether the misconduct actually occurred. *State v. Thomas*, 9th Dist. Summit No. 26893, 2014-Ohio-2920, ¶ 33. The court may rely on a juror's testimony when making that

determination. *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 114. "The [United States] Supreme Court clearly teaches that hearings on the issue * * * 'will frequently turn upon testimony of the juror in question' * * *.'" *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 30, quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982), fn. 7. "[T]he trial court [is] entitled to believe or disbelieve all or part of the [jurors'] statements * * *" in determining whether there was juror misconduct. *State v. Morris*, 9th Dist. Summit No. 25519, 2011-Ohio-6594, ¶ 32. Further, the trial judge is in the best position to ascertain the nature of the alleged jury misconduct and to fashion the appropriate remedy if the conduct did occur. *State v. Wharton*, 9th Dist. Summit No. 23300, 2007-Ohio-1817, ¶ 25. "[E]ven when juror misconduct has, in fact, occurred, a complaining party must establish prejudice." *State v. Hickman*, 9th Dist. Summit No. 27321, 2015-Ohio-4668, ¶ 32. We review the denial of a motion for mistrial for an abuse of discretion. *Morris* at ¶ 29.

**{¶20}** During jury deliberations, the foreman of the jury delivered a note to the court that explained that a juror had looked up an image of the location of the alleged breaking and entering but claimed that the picture did not add or subtract any value or knowledge. The trial court then interviewed each of the jurors, beginning with the foreman. The foreman explained that they were going over photographs of the location when another juror mentioned that he had looked at a picture of the building on his phone. He believed the juror also showed the image to a juror sitting next to him. Suddenly, one of the other jurors realized that it was inappropriate, and they decided to alert the court. The foreman opined that the incident would not affect his deliberations and that he had actually driven past the location many times. He said that the person who looked at the building on his phone did not add any information to their conversation and that his view of the picture did not instigate any further discussion.

{¶21} Two jurors stated that some jurors were curious about the area around where the breaking and entering occurred, which prompted a juror to look it up on his phone. They had not seen the picture, however, and did not believe it would affect their deliberations. Another juror stated that she had seen the image, which she described as an aerial view of the location, but it would not affect her deliberations because the image was worthless regarding the matters that were before them. A juror who actually accessed the image stated that he did not realize that using a map application would be inappropriate. He did not think he was investigating because he did not zoom in on the location. He alleged that the image would not affect his deliberations because what he saw was just like the State's drawing and, at the time he looked at it, they were just going over the charges again, "beating [them] like a dead horse[.]" Another juror who separately looked up the location on the same application stated that he "didn't understand the drawing that the officer had made, so I just wanted to see that fence line or whatever." He said that he viewed an aerial picture of the location because he "just didn't understand that drawing, and I didn't know how else to try to get a better understanding of that layout." The juror did not believe that his viewing of the image would affect his deliberations in any way.

{¶22} Other jurors indicated that there were many conversations going on in the jury room and so they were not aware of exactly what occurred until after the fact. Some of them indicated that the infraction happened after they started deliberating on the breaking and entering count, not when they were going back over the charges. The court found that the jurors had not been influenced by the images and that it had not affected the fairness of the process.

{¶23} Upon review of the record, we conclude that Mr. Dukes has not established that he was prejudiced by the jurors' accessing an aerial map of the property where the breaking and

entering count allegedly occurred. The trial court, therefore, exercised appropriate discretion when it denied his motion for mistrial. Mr. Dukes's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

APPELLANT'S CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF EVIDENCE TO SUSTAIN CONVICTION, THE TRIAL COURT ERRED BY DENYING APPELLANT'S CRIM.R. 29 MOTION.

**{¶24}** Mr. Dukes next argues that the trial court should have granted his motion for judgment of acquittal under Criminal Rule 29(A). Regarding the felonious assault and vandalism charges, Mr. Dukes challenges that officers' identification of him as the driver of the van and their testimony that the collision disabled their cruiser. He also argues that the officers' testimony was inconsistent with each other. Regarding the breaking and entering count, Mr. Dukes argues that there was no evidence of a forced entry or theft offense and that the phone with pictures of himself on it could have been placed there by someone else. He also argues that there was no evidence that the storage facility was broken into or that anything was stolen from it.

**{¶25}** Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶26}  The incident at the house led to two charges of felonious assault and one charge of vandalism.  To prove felonious assault, the State had to show that Mr. Dukes knowingly caused or attempted to cause physical harm to the officers by means of a deadly weapon, which, in this case, was a van.  R.C. 2903.11(A)(2).  To prove vandalism, the State had to show that Mr. Dukes knowingly caused serious physical harm to property that is owned, leased, or controlled by a governmental entity.  R.C. 2909.05(B)(2).

{¶27}  Regarding Mr. Dukes's identification, both officers testified that they saw Mr. Dukes as he drove by them in the van.  They also testified that, after the incident, they learned that Mr. Dukes might be staying with one of his ex-girlfriends.  They went to the ex-girlfriend's house the next day and found the van in her driveway.  They knew it was the same van because of the damage to it and the fact that it was missing a hubcap that had been left at the scene the night before.

{¶28}  Regarding whether there was damage to the officers' cruiser, both officers testified that the collision disabled the vehicle.  According to the officers, after the van drove away, they attempted to pursue it in the cruiser.  After going a short distance down the street, they realized that the wheels were too damaged, so they returned the vehicle to where they had originally parked.  The officers testified that it ended up having to be towed from its location.

{¶29}  The incident at the storage facility led to one charge of breaking and entering.  To prove breaking and entering, the State had to show that Mr. Dukes, by force, stealth, or deception, trespassed in an unoccupied structure with the purpose to commit a theft offense therein.  R.C. 2911.13(A).  Regarding that charge, a detective testified that a person had entered through a garage door by pulling the door up from the bottom until it broke the sliding bar that

kept the door closed. A crime scene investigator testified that a cellphone recovered inside the facility had a video on it that had been taken inside the facility. The cellphone also had pictures of Mr. Dukes on it and an email account attached to it that included Lavonte Dukes within its name. Coincidentally, Mr. Dukes had been arrested about seven hours after the break-in and was still in custody. At the time of his arrest, he was wearing clothing consistent with the clothing of the person who had taken the video inside the storage facility. He had also lost his cell phone and gave inconsistent accounts of where he had lost it.

{¶30} Upon review of the record, we conclude that there was sufficient evidence to support Mr. Dukes's convictions. The trial court, therefore, did not err when it denied his motion for judgment of acquittal.

{¶31} Regarding the weight of the evidence, if a defendant asserts that his convictions are against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶32} Mr. Dukes challenges the officers' in-court identification of him because they had never seen him before the night of the alleged felonious assault, the scene was dimly lit, and his trial was not until six months later. He argues that one of the officers admitted that he was color-

blind and could not distinguish between dark colors. According to Mr. Dukes, the officer's identification is not reliable because his skin is of a darker complexion. He also argues that the officers were inconsistent about when the victim of the alleged domestic violence incident identified him as the driver of the van. He also argues that they were inconsistent about whether the owner of the van had given him consent to use it. He further argues that the officers' testimony about the damage to their cruiser is inconsistent with the photographs of the vehicle.

{¶33} Mr. Dukes argues that his breaking and entering conviction is against the weight of the evidence because there is no photographic proof of damage to the storage facility, no one observed him inside the facility, there was no DNA evidence connecting him to the cellphone that was found, and there was no expert testimony that his palm print matched the palm of the person holding the phone in a video. He also argues that one detective contradicted the other detective's testimony about whether there was an email account connected with the cellphone. He further argues that the police department failed to follow proper procedures about documenting evidence.

{¶34} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. Regarding the felonious assault counts, the officers' identification was bolstered by the testimony of the alleged domestic assault victim and the fact that the van was found the next day at Mr. Dukes's ex-girlfriend's house. Regarding the vandalism count, the fact that the officers were able to return their vehicle to where they had started after attempting to pursue the van does not mean that it

was not disabled. Regarding the breaking and entering count, the detectives were not inconsistent about whether there was an email account connected with the cellphone. One detective merely stated that he did not know if there was an email account connected with the phone. In addition, we note that, even without expert testimony about the palm print, there was other evidence to place Mr. Dukes within the storage facility. Specifically, the email account associated with the cellphone and the fact that Mr. Dukes was arrested hours after the break-in wearing clothing consistent with the person in the video on the phone.

{¶35} Upon review of the record, we cannot say that the jury lost its way when it found Mr. Dukes guilty of the offenses of felonious assault, vandalism, and breaking and entering. Mr. Dukes's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

APPELLANT[']S COUNSEL PROVIDED INEFFECTIVE REPRESENTATION AT TRIAL.

{¶36} Mr. Dukes's final argument is that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, Mr. Dukes must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for his counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In

addition, to establish prejudice, Mr. Dukes must show that there existed a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶37} According to Mr. Dukes, his counsel was ineffective for failing to present any case in defense of him. He argues that his counsel should have subpoenaed potentially exculpatory evidence such as dash camera video from the officers' cruiser, called witnesses that would have provided exculpatory testimony, located and subpoenaed the owner of the van, and called an expert on palm analysis.

{¶38} Mr. Dukes also argues that his counsel should have objected to hearsay testimony by the officers and moved to dismiss the improperly charged vandalism offense. He argues that his counsel failed to move for discovery, including on the supplemental charge, and failed to properly prepare for trial. He argues that his counsel should have sought to exclude the officers' in-court identification of him and impeached their identifications with their police reports. He argues that his counsel never listened to his police interrogation, failed to object to other acts testimony by the alleged domestic violence victim, and failed to object to exhibits involving acts unrelated to the charges.

{¶39} Allegations of ineffective assistance of counsel that rely on evidence outside of the record are impossible to resolve on direct appeal. *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983). Such claims may be proved, instead, "through the post-conviction remedies of R.C. 2953.21." *Id*. Consequently, upon review of the record, we conclude that we are unable to review in this appeal Mr. Dukes's arguments that his counsel should have sought more discovery, prepared better for trial, and called experts and other witnesses in his defense.

{¶40} Regarding the vandalism count, we note that the State properly moved to amend the charge at the beginning of trial, and the trial court granted its motion. Accordingly, Mr. Dukes's counsel was not ineffective for failing to move to dismiss the count. Regarding hearsay testimony of the officers, we note that Officer Morgan's testimony about what he learned from the owner of the van was not hearsay. While Officer Hadbavny's testimony about their conversation with the van's owner included some hearsay, it was cumulative to what Officer Morgan had already testified. Accordingly, we cannot conclude that Mr. Dukes was prejudiced by its admission.

{¶41} Regarding the officers' in-court identification of him, Mr. Dukes has not identified any law that suggests that it should have been prohibited. Accordingly, we cannot say that his counsel was ineffective for failing to object to the identifications. Finally, regarding other acts testimony and the admission of, allegedly, unrelated exhibits, Mr. Dukes has not developed an argument demonstrating that the testimony and exhibits were not permitted. He also merely suggests that the testimony and exhibits may have caused bias in the jurors. We conclude that Mr. Dukes has failed to establish that there is a reasonable probability that, if the testimony was not allowed or the exhibits not introduced, the outcome of his trial would have been different. Mr. Dukes's sixth assignment of error is overruled.

## III.

{¶42} Mr. Dukes's second assignment of error is sustained. His first, third, fourth, fifth, and sixth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LAVONTE DUKES, pro se, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.