[Cite as *State v. Boyd*, 2025-Ohio-2811.]

STATE OF OHIO )  IN THE COURT OF APPEALS
                       )ss:  NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

STATE OF OHIO

    Appellee

v.

ERICA A. BOYD

    Appellant

C.A. No.    2024CA0092-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2024CR0089

DECISION AND JOURNAL ENTRY

Dated: August 11, 2025

CARR, Judge.

{¶1} Defendant-Appellant, Erica Boyd, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Boyd placed an ad on an app that allows users to advertise illicit services. J.B. responded to the ad because he was interested in receiving a sensual massage. The two exchanged numerous text messages in which they discussed pricing and meet up times. Because it was the middle of the night, J.B. expressed doubt that he had enough time to meet with Boyd. She eventually convinced him to see her, and J.B. drove to her home.

{¶3} Boyd answered the door when J.B. arrived. She let him inside and led him to a bedroom. Once there, J.B. used Cash App to send Boyd $180. J.B. saw a payment notification display on Boyd's cell phone screen, but Boyd claimed she had not been paid. The two chatted for several more minutes while Boyd used her cell phone. Boyd then announced that she had

received payment and asked J.B. whether he wanted anything to drink. When he accepted her offer, Boyd left the room. J.B. never saw her again.

{¶4} Shortly after Boyd left the bedroom, a man entered the house and confronted J.B. The man had a handgun in one hand and a sawed-off shotgun in the other. The man brought J.B. into the living room, took a picture of J.B.'s license, and asked him personal questions. He kept J.B. there for between five and ten minutes before allowing him to leave the house. On J.B.'s drive home, he received several calls from the man. The man demanded money from J.B. and threatened to report J.B. to the police if J.B. did not send him money. The police later identified the man as Boyd's husband.

{¶5} Boyd was charged with one count of aggravated robbery and one count of telecommunications fraud. The aggravated robbery count carried a firearm specification and two forfeiture specifications for the shotgun and handgun used in the commission of the offense. A jury found Boyd guilty of complicity in the commission of aggravated robbery. It also found her guilty of telecommunications fraud and her three specifications. The trial court sentenced her to a mandatory three-year term on the firearm specification and an indefinite term of five to seven and one-half years in prison on her other charges. The court ordered the two terms to run consecutively.

{¶6} Boyd now appeals from her convictions and raises five assignments of error for review. For ease of analysis, we consolidate several of the assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT CRIMINAL CONVICTIONS OF APPELLANT, RESULTING IN SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS.

## ASSIGNMENT OF ERROR III

TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S RULE 29 MOTION, WITH REGARD TO COUNTS ONE AND TWO OF THE INDICTMENT, AND THE FIREARM SPECIFICATION.

{¶7} In her first and third assignments of error, Boyd challenges the sufficiency of the evidence the State presented in support of her convictions. She challenges the jury's verdicts as well as the trial court's decision to deny her motion for acquittal. For the following reasons, we reject her arguments.

{¶8} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶9} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶10} Boyd was convicted of complicity in the commission of aggravated robbery. Aggravated robbery occurs when a person, "in attempting or committing a theft offense, . . . [has] a deadly weapon on or about [his or her] person or under [his or her] control and either display[s] the weapon, brandish[es] it, indicate[s] that [he or she] possesses it, or use[s] it . . . ." R.C.

2911.01(A)(1). R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense[.]" "A conviction based on complicity by aiding and abetting . . . must be based on evidence showing that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. This intent may be inferred from the surrounding circumstances." (Internal quotations and citations omitted.) *State v. Moore*, 2020-Ohio-3708, ¶ 12 (9th Dist.).

{¶11} Boyd also was convicted of telecommunications fraud. That offense occurs when a person, "having devised a scheme to defraud, . . . knowingly disseminate[s], transmit[s], or cause[s] to be disseminated or transmitted by means of a . . . telecommunication, telecommunications device, [or] telecommunications service . . . any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud." R.C. 2913.05(A). "'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

{¶12} J.B. testified that he was interested in getting a sensual massage and began using an app that allowed individuals to advertise services of that nature. He selected an ad that included pictures of a scantily clad female and a fully bared vulva. J.B. testified that the ad offered massages and "all kinds of sexual activities" in exchange for cash. The ad included a phone number for interested parties, so J.B. sent a text message to the listed number.

{¶13} J.B. testified that he exchanged numerous text messages with the number listed in the ad. The State introduced copies of the messages at trial. When J.B. first messaged the number, he did not receive a response for several hours. A response arrived shortly after 10:00 p.m. When J.B. did not reply, a second response arrived around 1:00 a.m. J.B. responded to that message just

after 3:00 a.m., and a conversation ensued. During the conversation, the person messaging J.B. asked what type of service he desired, how old he was, what race he was, and how much he was willing to pay. J.B. testified that he did not believe he had enough time to arrange a meeting before he had to go to work, but the individual messaging him repeatedly tried to coax him into meeting at that time. The individual promised to "make it worth [his] while" and offered a lower price for less time. The two continued to haggle as J.B. expressed further doubt. The individual then wrote: "honestly I'll do it for 160. If you can just come right now I'm not even trying to be rude or anything but . . . my rent due tomorrow and I'm a single [mom and] my kids are at grandmas tonight so it would be perfect[]. Come get this p***y stop being scared[.]" The individual's message included a picture of a female looking at the camera with a heart shape next to her face. J.B. eventually asked whether he could just receive a regular massage, and the individual agreed.

{¶14} J.B. testified that he drove to the address the individual gave him, and Boyd answered the door. He identified Boyd as the woman from the ad. J.B. testified that he and Boyd talked for a bit before she led him to a bedroom. Once there, they continued to talk, and J.B. used Cash App to send Boyd $180. J.B. testified that he could see Boyd's cell phone screen, so he noticed when she received a notification confirming his payment. Nevertheless, Boyd denied having received the payment. She played on her phone for several minutes before claiming she had just received the payment. Boyd then immediately asked J.B. if he wanted a drink. When he said yes, Boyd left the room. J.B. testified that he never saw her again.

{¶15} After J.B. lost sight of Boyd, he heard someone enter the house. He testified that he looked out of the bedroom and saw a man pointing a pistol and a shotgun at him. J.B. testified that the man brought him out to the living room and refused to let him leave the house. The man took a picture of J.B.'s driver's license and asked him "a bunch of personal questions[.]" J.B.

supplied the man with false answers because he did not want the man to know his personal details. He testified that the man kept him in the living room for five to ten minutes before walking him out the front door. J.B. was then able to get back in his car and leave.

{¶16} J.B. testified that the man called him on his drive home. According to J.B., the man called him from several different numbers, including the one Boyd had used to communicate with him. J.B. testified that the man attempted to blackmail him by threatening to go to the police unless J.B. paid him money. J.B. reported the incident to the police himself later that morning.

{¶17} Detective Rodney Rees interviewed J.B. at the police station. After taking J.B.'s statement, Detective Rees researched the address where J.B. had met Boyd. He ultimately compiled two line-ups, and J.B. identified Boyd as the woman he had met. He also identified the man who had held him at gun point. Detective Rees testified that the police discovered the man was Boyd's husband.

{¶18} Detective Rees testified that he interviewed Boyd after her arrest. She initially denied any involvement in this matter. Boyd said she did not recall having an ad that someone answered. She also said there were no guns in her home. When the detective told her that she was going to be charged with a felony, however, Boyd said that a man paid her for a massage, she massaged him on her living room couch, and he left without incident. She claimed her husband was not home at the time. After further discussion, Boyd said it was possible J.B. might have seen her husband when he left.

{¶19} Detective Rees also interviewed Boyd's husband. He testified that the husband said he was hiding when J.B. came into their house. The husband said he found J.B. in the back bedroom after he heard noises. He told the detective that he had a gun on his hip and a shotgun in

his hand when he encountered J.B., but he denied pointing either weapon at him. He admitted taking a picture of J.B.'s license and calling J.B. after he left to "try[] to scare the kid."

{¶20} Detective Rees testified that he listened to multiple jail phone calls between Boyd, her husband, and the husband's sister. During the calls, Boyd and her husband repeatedly talked about the fact that they had "completely different stories." Detective Rees testified that Boyd also repeatedly expressed her opinion that she had been overcharged. He testified that Boyd "continuously believed . . . that it wasn't robbery, if anything it was extortion."

{¶21} Detective Rees testified that Boyd and her husband were arrested at a traffic stop. When searching their vehicle, the police found a handgun in the center counsel. The police also found a sawed-off shotgun on Boyd's living room couch when they searched her residence. J.B. confirmed that the handgun and shotgun the police found were the same ones that Boyd's husband had pointed at him.

{¶22} Boyd argues that the State presented insufficient evidence to sustain her convictions and firearm specifications. She notes that there was no evidence she ever directly threatened or harmed J.B., pointed a weapon at him, or demanded additional money from him. Although J.B. said she never gave him a massage, Boyd notes that there was no evidence to corroborate his testimony. According to Boyd, there was no evidence that she acted in conjunction with her husband, knew he confronted J.B., or knew he contacted J.B. to demand money.

{¶23} Viewing the evidence in a light most favorable to the State, we cannot conclude that Boyd's Crim.R. 29 motion had merit or that her convictions are based on insufficient evidence. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Boyd answered the door when J.B. came to her house, and he identified her as the woman from the ad. The jury heard testimony that Boyd accepted money from J.B. for a massage but never gave him a massage. She led him to a

bedroom, kept him there while she used her phone, and then left the room for the stated purpose of getting J.B. a drink. The jury heard testimony that Boyd never reappeared. Instead, her husband arrived, held J.B. at gunpoint, extracted personal information from him, and tried to blackmail him by phone after he left. The jury heard testimony that Boyd initially lied to the police about the incident, claiming that she did not remember placing any ad or having anyone come to her house for a massage. They also heard testimony that she felt she had been overcharged because, at best, what she had done amounted to extortion. A rational trier of fact could have concluded that Boyd used a telecommunications device or service to lure J.B. to her house for the purpose of defrauding him. A rational trier of fact also could have concluded that Boyd aided and abetted her husband in the commission of aggravated robbery by luring J.B. to their house for the purpose of committing one or more theft offenses. Boyd has not shown that the trial court erred by denying her Crim.R. 29 motion or that her convictions are based on insufficient evidence. Accordingly, her first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR II

THE CONVICTIONS OF APPELLANT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND SAID CONVICTIONS MUST BE VACATED.

{¶24} In her second assignment of error, Boyd argues that her convictions are against the manifest weight of the evidence. We disagree.

{¶25} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶26} Boyd argues that her convictions are against the manifest weight of the evidence because there was "no evidence" that she harmed or threatened J.B., possessed a weapon, demanded additional money from him, or was aware of her husband's actions. She notes that the State never corroborated J.B.'s claim that he did not receive a massage. Further, she argues that, if he was dissatisfied with the type of massage he received, J.B. had a motive to lie.

{¶27} To the extent Boyd argues that the State presented "no evidence" in support of certain items, her argument sounds in sufficiency rather than weight. *See State v. Yatson*, 2022-Ohio-2621, ¶ 69 (9th Dist.). Sufficiency tests the State's burden of production while manifest weight tests its burden of persuasion. *State v. Ross*, 2023-Ohio-1185, ¶ 10 (9th Dist.). Thus, manifest weight challenges concern the reliability or believability of the State's evidence, not its adequacy. *Id.* We have already determined that Boyd's convictions are based on sufficient evidence. *See* Discussion of Assignments of Error I and III, *supra*. We decline to revisit that issue. In reviewing Boyd's second assignment of error, we confine our review to the limited weight challenge she has presented; to wit: that J.B. had a motive to lie and lacked corroboration.

{¶28} A thorough review of the evidence presented at trial reveals that this is not the exceptional case where the trier of fact clearly lost its way. The State introduced evidence to corroborate J.B.'s testimony, including a printout of Boyd's ad, copies of the text messages he exchanged with Boyd, and a printout showing that he sent Boyd $180 during the time he said he was with her. The jury heard testimony that Boyd initially denied advertising massage services or having anyone come to her house. She only admitted being involved after the police informed her

that she was facing felony charges. Even then, Boyd's story differed from that of her husband. Boyd told detectives that J.B. left her house after a massage, but her husband told detectives that he found J.B. in the bedroom, confronted him with two firearms, and later called him to scare him. The jury also heard testimony that Boyd repeatedly claimed she had been overcharged because, at best, what she had done amounted to extortion.

{¶29} This Court has repeatedly held that it "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.). The record reflects that this is not the exceptional case where the evidence weighs heavily against Boyd's convictions. *See Otten* at 340. Accordingly, her second assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, WHICH RESULTED IN A CONVICTION ON BOTH COUNTS, AND THE FIREARM SPECIFICATION; AND DEPRIVED APPELLANT OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS OF LAW.

{¶30} In her fourth assignment of error, Boyd argues that she was denied due process of law due to ineffective assistance of counsel. We disagree.

{¶31} To prevail on a claim of ineffective assistance of counsel, Boyd must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, she must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, she must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997). "This Court need not address both prongs

of the *Strickland* test if the appellant fails to satisfy either prong." *State v. Gannon*, 2020-Ohio-3075, ¶ 23 (9th Dist.), citing *State v. Ray*, 2005-Ohio-4941, ¶ 10 (9th Dist.).

{¶32} Boyd argues that her counsel was ineffective in four respects. Specifically, she argues her counsel was ineffective because she (1) failed to present exculpatory evidence in the form of a recording from a ring camera, (2) failed to ask meaningful questions during voir dire, (3) failed to seek the removal of two potential jurors, and (4) "wholly failed to address the allegation of complicity . . ." in her arguments to the jury. Boyd's brief also includes an assertion that the cumulative effect of her counsel's errors deprived her of the effective assistance of counsel. We address each of Boyd's arguments in turn.

Ring Camera Footage

{¶33} Boyd argues that her counsel was ineffective for failing to present a recording taken from the ring camera at her home. The State moved to exclude the footage before the start of trial because defense counsel only sent the State a seventeen-second clip. The State argued that it would be prejudiced by the admission of a partial recording, which only showed J.B. walking out Boyd's door and shaking hands with a male whose face could not be seen. The State argued that additional footage should have been available, including footage that might have shown Boyd's husband entering the house with firearms.

{¶34} After hearing arguments from both parties, the court informed defense counsel that it would not allow her to introduce a partial recording. Defense counsel indicated that she would work on obtaining and reviewing the remainder of the footage and providing it to the State. The following day, she informed the court that she had received the footage late the prior evening but had yet to make a copy for the State. She indicated that she never intended to introduce any footage before her case-in-chief, so it would not be an issue until after the State rested. The court instructed

defense counsel to inform the State as soon as possible whether she intended to play the footage. Trial then resumed and concluded without the footage being presented or discussed further.

{¶35} Boyd argues that she was prejudiced by her counsel's failure to play the ring camera footage because it was exculpatory. According to Boyd, the footage showed J.B. pleasantly shaking hands with her husband before leaving their home. She argues that the footage "would clearly impeach [J.B.'s] claim that he was robbed and held at gun point." She argues that there was no reasonable explanation as to why her counsel failed to present the footage.

{¶36} Upon review of the record, we are unable to address Boyd's argument. That is because the ring camera footage is not a part of the record. "Allegations of ineffective assistance of counsel that rely on evidence outside of the record are impossible to resolve on direct appeal." *State v. Dukes*, 2019-Ohio-2893, ¶ 39 (9th Dist.). "Such claims may be proved, instead, 'through the post-conviction remedies of R.C. 2953.21.'" *Id.*, quoting *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983). Because this Court is unable to review the footage at the center of Boyd's argument, we cannot address her claim that she was prejudiced by its omission.

Meaningful Questions on Voir Dire

{¶37} Next, Boyd argues that her counsel was ineffective because she failed to ask meaningful questions on voir dire. Boyd notes that her counsel spent time asking jurors questions such as whether their children had a long weekend, whether they had dropped off their children that morning, and whether they baked. According to Boyd, her counsel failed to ask questions aimed at eliciting valuable information.

{¶38} The Supreme Court "has long 'recognized that counsel is in the best position to determine whether any potential juror should be questioned and to what extent.'" *State v. Worley*, 2021-Ohio-2207, ¶ 96, quoting *State v. Murphy*, 91 Ohio St.3d 516, 539 (2001). "'Few decisions

at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors.'" *State v. Mundt*, 2007-Ohio-4836, ¶ 64, quoting *Miller v. Francis*, 269 F.3d 609, 620 (6th Dir. 2001). "The defense can legitimately choose a strategy that is aimed at building a rapport with the jury." *State v. Garrett*, 2022-Ohio-4218, ¶ 188.

{¶39} The record reflects that Boyd's counsel asked the potential jurors questions aimed at uncovering common ground between them and questions aimed at explaining legal concepts to the jury. For example, defense counsel asked who could bake because she later likened recipes and their various components to the elements of offenses and the instructions the jurors would receive from the court. She also asked the jury questions about their attitudes toward jury duty, how they might feel about Boyd choosing not to testify, and whether they could set aside assumptions and employ logic to unravel all the facts and determine whether someone had done something wrong. The record supports the conclusion that she asked the venire certain questions to build a rapport with them before moving onto more complicated questions. Boyd has not shown that her counsel's strategic decision to do so amounted to ineffective assistance of counsel. Accordingly, we reject her argument to the contrary.

<u>Challenging Potential Jurors</u>

{¶40} Next, Boyd argues that her counsel was ineffective because she failed to challenge two potential jurors via either a peremptory challenge or a challenge for cause. The State notes and the record reflects that both individuals were excused following challenges exercised by the State. Boyd has not explained how she was prejudiced by her counsel's failure to excuse the individuals given that neither one served on her jury. This Court will not construct an argument

on her behalf. *See* App.R. 16(A)(7). Because Boyd has not shown that she was prejudiced by her counsel's performance, we reject her argument. *See Keith*, 79 Ohio St.3d at 534.

Alleged Failure to Address Complicity

{¶41} Next, Boyd argues that her counsel was ineffective because she "wholly failed to address the allegation of complicity . . . ." The record does not support her assertion. Defense counsel specifically argued that Boyd's actions did not amount to complicity to commit aggravated robbery. During closing arguments, she acknowledged that Boyd had advertised illicit services but said "that doesn't mean that she committed aggravated robbery or was complicit with that." Defense counsel further argued that Boyd's act of posting of her ad was "not enough that she's complicit." Because the record does not support Boyd's argument that her counsel failed to address the complicity allegation, this Court finds no merit in it.

Cumulative Error

{¶42} Finally, Boyd argues that the cumulative effect of her counsel's errors deprived her of the effective assistance of counsel. Assuming without deciding that Boyd has properly raised a cumulative error argument within the scope of her ineffective assistance of counsel argument, we must conclude that it lacks merit. "In the absence of multiple errors, the cumulative error doctrine does not apply." *State v. Howse*, 2024-Ohio-503, ¶ 30. Boyd has not demonstrated the presence of multiple errors, so the cumulative error doctrine is inapplicable. Her fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED WHEN IT IMPOSED AN INDEFINITE PRISON
TERM OF 5 TO 7 ½ YEARS, WHICH IS NOT SUPPORTED BY THE RECORD.

{¶43} In her fifth assignment of error, Boyd challenges the indefinite prison term the trial court imposed as part of her sentence. She argues that the court failed to properly consider the

factors set forth in R.C. 2929.12 and sentenced her to a prison term of unreasonable length. For the following reasons, we reject her argument.

{¶44} "R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals." *State v. Jones*, 2020-Ohio-6729, ¶ 27. Under that statute, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1, citing R.C. 2953.08(G)(2). R.C. 2953.08 "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39. "R.C. 2953.08(G)(2) permits a record-does-not-support-the-sentence review only for sentences that are imposed pursuant to certain enumerated statutes, which do not include R.C. 2929.11 or 2929.12." *State v. Bryant*, 2022-Ohio-1878, ¶ 21.

{¶45} Boyd argues that the trial court failed to consider certain factors set forth in R.C. 2929.12 when imposing her sentence. She argues that the court did not consider the fact that she was unlikely to commit future crimes, the fact that she did not cause any physical or property harm, and the fact that she was undergoing mental health and substance abuse counseling at the time of sentencing. According to Boyd, "[t]hese important factors were not properly considered by the trial court when it imposed much more than the minimum prison term upon a mother who had never served a prison term before."

{¶46} This Court is unable to review Boyd's arguments. That is because, "this Court may not review an argument that (1) the record does not support the imposition of a prison sanction, or (2) the trial court failed to properly consider the factors set forth in R.C. 2929.11 and 2929.12."

*State v. Belton*, 2025-Ohio-1173, ¶ 6 (9th Dist.). R.C. 2953.08 does not authorize a review of that kind. *See Jones* at ¶ 39. Accordingly, Boyd's fifth assignment of error is overruled.

## III.

{¶47} Boyd's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

GREGORY SCOTT ROBEY, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.